AARON  SOLOMON  v.  CHARLES  S.  GROSBECK  AND  NOAH
MOORE.

*Trespass—Evidence of grant from government—General issue—Evidence of title.*

1. Plaintiff sued defendants in trespass for an alleged unlawful entry upon lands occupied by him for fishing purposes under a lease from Alexander T. Campau, who traced his title through Joseph Campau, and introduced the report of government commissioners appointed to settle claims made by citizens of Michigan Territory to lands therein, in which the commissioners recommended for confirmation to said Joseph Campau the lands in question, which report was confirmed by act of Congress. The lands had been subjected to taxation, and defendants claimed title thereto through tax deeds issued by the Auditor General.

   *Held,* that the report and confirmation were equivalent to a grant, and sufficient for the purposes of the suit.

2. On a review of the testimony, —

   *Held,* that defendants were guilty of trespass as charged, and the case should have gone to the jury on the question of damages.

3. A declaration in trespass charged defendants with breaking and entering plaintiff's close, with force and arms, describing the premises, and specifying the alleged wrongful acts thereafter committed, to which a plea of the general issue was interposed.

   *Held,* that the *title* to the land was put in issue, and it was competent for defendant to show an adverse one under the pleadings.

Error to Macomb. (Stevens, J.)  Argued January 26, 1887.  Decided April 28, 1887.

Trespass.  Plaintiff brings error.  Reversed.  The facts are stated in the opinion.

*F. A. Baker,* for appellant.

*Eldredge & Spier,* for defendants.

SHERWOOD, J.  The plaintiff in this case declares in trespass *quare clausum,* and alleges that the defendants,—

"On the third day of January, 1885, and on divers other days and times between that day and the day of the commencement of this suit, with force and arms, broke and entered a certain close of the plaintiff, known and described as 'Private Claim Five Hundred and Forty-five' (545), lying on the south border of Clinton river, adjoining private claim one hundred and sixty-eight (168) on the upper or west side, and on the rear or lower side taking in the remaining part of the prairie and marsh at the entrance of said river, containing 640 acres, more or less, and being situated in the township of Harrison, in said county of Macomb, and on which close there is situated a valuable fishery, at which large quantities of black bass, perch, pickerel, and other fish are annually caught, to wit, at Harrison, in the county of Macomb; and then and there, with force and arms, drove, ejected, and expelled the servants and agents of the plaintiff, who were there for the purpose of fishing at said fishery, from the said close of the plaintiff, and from the fishery and the waters thereof; and then and there caught large quantities of fish therefrom, and converted the same to their own use, to wit, 10 tons of fish, of great value, to wit, of the value of $1,000; and then and there prevented the plaintiff and his servants from catching any fish at said fishery, whereby a large quantity of fish, to wit, 10 tons of fish, of great value, to wit, of the value of $1,000, became wholly lost to the plaintiff, to wit, at Harrison aforesaid."

The defendants pleaded the general issue, without any notice of special matters.

The trial of the issue was had in the Macomb circuit, before a jury, and after the testimony was closed the circuit judge directed a verdict for the defendants, holding that it appeared from the undisputed testimony—

"That the defendant Noah Moore, in the month of January, 1885, simply went on the premises in question, and, claiming to have a lease from Mr. Grosbeck, the other defendant, quietly, and without a breach of the peace, took possession of the fish shanty, and ever since has remained in possession, and is now in possession;"—

And that the plaintiff cannot recover of either of the defendants, as he has not shown that he owns or is entitled to the property in question. Plaintiff's counsel excepted to

this ruling, and to the direction of the verdict given by the court. These rulings are made the subject of the last three. errors assigned, and I think the assignments must be sustained, and that the circuit judge erred in his rulings.

The defendants made claim to the title of the disputed premises, and to sustain this claim offered in evidence two tax deeds for the taxes of the years 1880 and 1881, respectively; but it will be noticed that the learned circuit judge ignored these, as well he might, for the plaintiff's testimony is seriously prejudicial to their validity, and leaves the defendants' defense to rest solely on their obtaining peaceable possession of the *locus in quo*.

The first question that arises, and the one first to be disposed of, is, does the evidence show beyond controversy that the defendants did acquire such possession? If not, then the case should have gone to the jury.

It is not shown by the bill of exceptions that it contains all the evidence in the case. This question will therefore have to be determined from what has been placed before us.

Upon the trial of the cause, the plaintiff, to show his right to the possession of the property, introduced what purported to be the report of commissioners of the general government, appointed for the purpose of settling claims made by citizens of Michigan Territory to lands therein (4 Am. State Papers, 695, 763), and from which it appears the commissioners recommended for confirmation to Joseph Campau, as administrator, etc., the lands in question; and this seems to have been regarded as the plaintiff's source of title to the disputed premises, and through this source the plaintiff's lessor, Alexder T. Campau, derived his title and the right to occupy and possess the property.

I think, for the purpose of this suit, at least, the report of the commissioners referred to, together with the act of Congress of the seventeenth of April, 1828, confirming the recommendations of the commissioners, must be held equiv-

alent to a grant. The premises have been twice made the subject of partition in the circuit court for the county of Wayne, in chancery,—the first, in February, 1869, and again in July, 1870. In fact, the plaintiff's grantor's chain of title is not seriously disputed upon the testimony brought before us. Really, the title which the defendants sought to establish virtually admitted the transfer of the property by the general government, or else it would not have been subject to the taxes upon which the defendants' title was entirely based.

It further appears from the testimony that D. J. Campau was agent for the premises in question long before and after Alexander T. Campau obtained them. He was sworn for the plaintiff, and testified that the first he knew of the property was when Dennis Campau owned it, many years ago, and had it rented to a Mr. Bowers; that on the death of Dennis, Bowers paid the rent a number of times to the witness for the heirs of Dennis' estate; that, after Alexander T. Campau got the property, witness, as his agent, rented it to W. M. Campbell, in 1879, and thereafter, from year to year, until 1884, and received the rent therefor for Alexander, and that Campbell used and occupied the property.

Witness further testified that he rented the property for one year, commencing on the first day of December, 1884, and ending November 30, 1885; that with it he rented to Solomon the shanty thereon, the fishing privilege and reel; that the rental agreed upon for the year was $125, and that Solomon paid it in advance. Witness thus rented the property to Solomon in the month of October, 1884; and the record further shows that the property was in possession and control of W. M. Campbell, who had a man by the name of Miller in the shanty, in charge of the premises; that in December, after the renting, Solomon saw Mr. Miller, and told him he had rented the property, and directed and engaged him to go there and take care of the property, and not go

off of the same until he gave him further orders; that Campbell stayed and fished until the first of December, and Miller did as Solomon wished him to, and occupied the shanty until about the first of March following; that about the first of January, 1885, Noah Moore came to the premises, said he had rented them of defendant Grosbeck, and went to fishing upon them. It is this entry that is alleged as the trespass, and, if the testimony above referred to is true, it seems difficult to regard it otherwise. There is no testimony tending to show that the entry was with the consent of plaintiff, or any of his agents; indeed, it is characterized by all the testimony as hostile.

As we have already said, the plaintiff holding the legal title would give him the right of possession, and I think the testimony shows his possession invaded by the defendants, and the testimony shows them guilty of the trespass complained of. The acts constituting the trespass not having been disputed, the case should have gone to the jury upon the question of damages.

The evidence of title was admissible under the pleadings.[1] Steph. Pl. 174; 1 Cnitty, Pl. 437; *Dodd v. Kyffin*, 7 Term Rep. 354; *Proprietors Monumoi Great Beach v. Rogers*, 1 Mass. 159; *Anthony v. Gilbert*, 4 Blackf. 348; *Strong v. Hobbs*, 20 Vt. 185; 2 Greenl. Ev. § 625; *Estey v. Smith*, 45 Mich. 402.

The judgment must be reversed, and new trial granted.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J. I concur in the result, granting a new trial.

---

[1] Plaintiff's counsel objected to the tax deeds as not admissible under the general issue, the declaration merely alleging that the defendants broke and entered plaintiff's close, which is not an allegation that he holds the title, hence it was not put in issue.